UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
MATTHEW S. MAFFUCCI,                :
                                    :
        Petitioner,                 :    Civ. Action No. 16-4983 (NLH)
                                    :
    v.                              :    OPINION
                                    :
WARDEN ORTIZ,                       :
                                    :
        Respondent.                 :
_____:

APPEARANCES:

Matthew S. Maffucci
19600-014
Watkins House
136 Collins Street
Hartford, CT 06105
    Petitioner Pro se

Jessica Rose O'Neill
Office of the U.S. Attorney
District Of New Jersey
401 Market Street
4th Floor
P.O. Box 2098
Camden, NJ 08101
    Counsel for Respondent

HILLMAN, District Judge

On or about August 6, 2016, Petitioner Matthew S. Maffucci ("Petitioner"), a prisoner then confined at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey, filed this Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, challenging an institutional disciplinary decision. (ECF No. 1.)

After the Court administratively terminated this matter for failure to submit the required $5 filing fee or a complete in forma pauperis application, Petitioner submitted the filing fee, as well as an Amended Petition. (ECF No. 5.) Respondent Warden Ortiz ("Respondent") submitted an Answer on February 21, 2017 (ECF No. 7), and Petitioner submitted his Reply thereafter (ECF No. 9). The matter is now fully briefed and the Court has considered all submissions by the parties. For the reasons that follow, the Petition will be denied.

**I.   BACKGROUND**

On February 7, 2015, while he was a prisoner at FCI Fort Dix, Petitioner was selected for a random urinalysis test. (Answer, Declaration of Tara Moran ("Moran Decl."), Ex. 4, Bureau of Prisons ("BOP") Incident Report.) Officer Wright notified Petitioner at 7:15 PM that he had two hours to provide a urine sample for a drug test. (Id.) After several attempts, Petitioner ultimately did not provide a sample. (Id.)

The officer issued an Incident Report, charging Petitioner with Refusing to Provide a Urine Sample in violation of Code 110. (Id.) The next day, the incident report was provided to Petitioner and he stated that the incident report was accurate as written. (Id.) He further stated that he could not urinate while being observed and that he was not taking any medication,

nor did he have any medical condition, which would make it difficult to urinate. (Id.)

FCI Fort Dix staff investigated the incident report, and a hearing was held before a Unit Discipline Committee ("UDC") on February 11, 2015. (Id.) At the hearing, Petitioner stated again that he could not provide a urine sample. (Id.) At the conclusion of the hearing, the UDC referred the incident report to the Discipline Hearing Officer ("DHO") for disposition, and it recommended "sanction that is deemed appropriate by the DHO in order to deter future infraction." (Id.)

On February 19, 2015, the DHO conducted a hearing. (Moran Decl., Ex. 7, DHO Report.) At the hearing, Petitioner again stated that he "could not go" during the urinalysis test. (Id.) The DHO also considered a memorandum submitted by Senior Officer M. Martinez and the Incident Report. (Id.) At the conclusion of the hearing, the DHO determined Petitioner committed the prohibited act of Refusing to take a Drug/Breathalyzer test. (Id.) As a result of the DHO's findings, Petitioner was sanctioned with a loss of 40 days of good conduct time, 15 days of disciplinary segregation (suspended 90 days), and 30 days of commissary restriction. (Id.)

Petitioner appealed the decision of the DHO to the Northeast Regional Office of the Bureau of Prisons on March 5, 2015. (Moran Decl., Ex. 2, Regional Appeal.) Petitioner argued

3

that he did not refuse to provide a urine sample; rather, he was unable to provide one. (Id.) He also argued that he had recently started a medication which lists "trouble urinating" as a possible side effect. (Id.) On April 7, 2015, the Regional Director denied the appeal, noting the Petitioner did not notify staff at the time of the urinalysis test that he was taking medication or that he had medical conditions affecting his urination. (Id.) On May 4, 2015, Petitioner appealed to the Central Office. (Moran Decl., Ex. 3, Central Office Appeal.) In this appeal, Petitioner again claimed he did not refuse, but instead suffers from medical and psychological conditions which caused his inability to urinate. (Id.) Additionally, he again argued that medication may have caused the inability to urinate. (Id.) On May 24, 2015, the Central Office denied the appeal, noting Petitioner did not raise these issues during the investigative phase of the incident report or at the disciplinary hearing. (Id.)

On November 5, 2016, Petitioner filed the instant Amended Petition. (ECF No. 5.) He raises three grounds for relief:

> (1) Warden Ortiz violated Petitioner's Eighth Amendment rights when he punished him for being disabled by causing him to physical pain as a result of drinking excessive amounts of water;
>
> (2) Warden Ortiz violated the Americans with Disabilities Act when he denied Petitioner a reasonable accommodation for his disability;

>     (3) Warden Ortiz violated Petitioner's rights
>     when he revoked 40 days of Petitioner's Good
>     Time Credit for refusing to provide a urine
>     sample.[1]

**II. DISCUSSION**

**A. Legal Standard**

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, including challenges to prison disciplinary proceedings, that affect the length of confinement, such as deprivation of good time credits. See Preiser v. Rodriguez, 411 U.S. 475, 498–99 (1973); Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997); Wilkinson v. Dotson, 544 U.S. 74 (2005). A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to § 2241, "as the action could affect the duration of

---

[1] It appears that Petitioner's first two grounds are raising conditions of confinement claims, which are not cognizable in this habeas action. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002) ("when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, [a civil rights action] is appropriate"); Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172 (3d Cir. 2007) (habeas is proper vehicle to challenge disciplinary proceeding resulting in loss of good-time credits, but claims regarding sanctioned loss of phone and visitation privileges not cognizable in habeas). To the extent he raises such arguments to challenge his disciplinary proceedings, as discussed below, there was nothing in the record at the time of the testing to suggest any medical issues affecting urination which the Prison did not "accommodate."

5

the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 n. 2 (3d Cir. 2008).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner was incarcerated in New Jersey when he filed the Petition, and he challenges the loss of good time credits. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241-44 (3d Cir. 2005); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990).

**B. Analysis**

Petitioner is challenging the results of a prison disciplinary hearing where he was found guilty of refusing to provide a urine sample and sanctioned with the loss of 40 days GTC.

Prisoners are guaranteed certain due process protections when a prison disciplinary proceeding may result in the loss of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974). The due process protections afforded an inmate must include: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) appearing before an impartial decision making body. See Crosby v. Piazza, 465 F.

6

App'x 168, 171-72 (3d Cir. 2012) (per curiam) (citing Wolff, 418 U.S. at 563-71). Additionally:

> [R]evocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (internal quotation marks and citation omitted). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence. See Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989). Rather, the relevant inquiry asks whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.

Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013) (per curiam).

It appears, and he does not allege to the contrary, that Petitioner was provided with all the due process safeguards identified in Wolff. However, Petitioner is arguing that the decision of the DHO to revoke 40 days of his GTC was not supported by the record.

When making his decision, the DHO relied on Petitioner's hearing testimony; the Incident Report; the investigation; and the memorandum dated February 7, 2015 from Officer Martinez. (DHO Report ¶¶ III(B), (D).) During the investigation, Petitioner stated that he could not urinate while being observed

7

and that he was not taking any medication, nor did he have any medical condition, which would make it difficult to urinate. (Incident Report ¶ 24.) During the hearing, Petitioner testified that he went to take the "UA" but he "could not go." (DHO Hearing Officer Report ¶ III(B).) In light of the fact that Petitioner had admitted that he did not provide the sample, the DHO found that he had violated Code 110 – Refusing to Take a Drug/Breathalyzer Test. (Id.) Certainly, there was ample evidence in the record to support the DHO's conclusion that Petitioner had failed to submit to a drug test. In fact, there was no dispute that Petitioner had failed to do so since, by his own admission, he was unable to provide a sample.

Petitioner raised the medical issues for the first time on appeal to the Regional and Central Offices of the BOP. Both the Regional and Central Offices properly found that Petitioner had not alerted the investigator or the DHO that he was unable to provide a urine sample due to a medical issue. (Moran Decl., Exs. 2, 3.) In fact, he had affirmatively told the investigator that he did not have any medical issues, nor was he on any medication, that could affect his ability to provide a sample. (Incident Report ¶ 24.) Though Petitioner thereafter identified several medications and medical issues which could have affected his ability to provide a sample, the BOP nevertheless found that because Petitioner had not raised these issues with the

investigator and DHO, there was sufficient evidence in the record to support the DHO's decision to impose sanctions. (Moran Decl., Exs. 2, 3.)

The Court agrees. Petitioner did not inform the investigator or the DHO about any issues or medications that could have impacted his ability to comply with the request. Moreover, while Petitioner thereafter sought medical attention for his difficulty urinating in front of others, there was nothing in his medical records at the time of the failed test to suggest a problem. (Am. Pet., Exs. D, E.) In sum, there was more than sufficient evidence in the record to support the DHO's conclusion that Petitioner had violated Code 110 – Refusing to Take a Drug/Breathalyzer Test. See Hill, 472 U.S. at 455-56; Void v. Warden Fort Dix FCI, 345 F. App'x 818, 820-21 (3d Cir. 2009) (affirming denial of habeas relief when there was no documentation of prisoner's medical condition in his prison record at the time he was asked to give a urine sample or at the time of his disciplinary hearing). Petitioner's due process rights were not violated and he is not entitled to habeas relief.

To the extent Petitioner also argues that the loss of 40 days good time credit violates the Eighth Amendment because it is "grossly disproportionate" to the severity of the offense, see Rummel v. Estelle, 445 U.S. 263, 271-74 (1980), the Court

9

notes that it is within the range of available sanctions for a violation of Code 110.  See 28 C.F.R. § 541.3; see also Shelton v. Jordan, 613 F. App'x 134, 135 (3d Cir. 2015) ("[g]iven the severity of [petitioner's] offenses, and because the sanctions fall within the applicable range permitted by the regulation, we conclude that the punishment here did not violate the Eighth Amendment").  Additionally, courts have affirmed the imposition of the loss of 40 days good time credit, or more, for failing/refusing to provide a urine sample in situations similar to Petitioner's.  See, e.g., Void, 345 F. App'x at 820; Lang v. Sauers, 529 F. App'x 121, 122 (3d Cir. 2013); Jackson v. Sneizek, 342 F. App'x 833, 836 (3d Cir. 2009); Noreiga v. Schultz, No. 10-4805, 2011 WL 1870374, at *1 (D.N.J. May 12, 2011).  As such, the Court finds that the sanction imposed on Petitioner did not violate the Eighth Amendment.

**III. CONCLUSION**

For the reasons set forth above, the Petition will be DENIED.  An appropriate Order follows.


Dated: May 5, 2017                      s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

10